Teresa S. Renaker – CA State Bar No. 187800
Margo Hasselman Greenough – CA State Bar No. 228529
Kirsten G. Scott – CA State Bar No. 253464
RENAKER HASSELMAN SCOTT LLP
235 Montgomery Street, Suite 944
San Francisco, CA 94104
Telephone: (415) 653-1733
Facsimile: (415) 727-5079
teresa@renakerhasselman.com
margo@renakerhasselman.com
kirsten@renakerhasselman.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| NAOMI BERMAN,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>ESTEE LAUDER INC., THE ESTEE LAUDER INC. EMPLOYEE BENEFITS COMMITTEE, ALIGHT SOLUTIONS LLC, and STATE STREET BANK & TRUST CO.,<br><br>　　　　Defendants. | Case No. 3:19-cv-06489<br><br>**COMPLAINT (ERISA)** |

**JURISDICTION**

1.　This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and the specific jurisdictional statute for claims brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f).

**VENUE**

2.　Venue lies in the Northern District of California pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Estee Lauder Companies 401(k) Savings Plan is administered in part in this District and the breaches alleged occurred in part in this District.

**INTRADISTRICT ASSIGNMENT**

3.　Pursuant to Civil Local Rule 3-2(c), this case should be assigned to the San

COMPLAINT                                                                                                                   PAGE 1

Francisco Division or Oakland Division because a substantial part of the events or omissions which give rise to the claims occurred in San Francisco.

## NATURE OF THE CASE

4.     In September and October 2016, an unknown person or persons stole Plaintiff Naomi Berman's retirement savings by withdrawing a total of $99,000 in three separate unauthorized distributions from her account in the Estee Lauder Companies 401(k) Savings Plan ("the Lauder Plan"). Ms. Berman brings this action to remedy the harm caused by the Defendant Lauder Plan fiduciaries' failures to safeguard the Lauder Plan's assets.

## THE PARTIES AND THE PLAN

5.     At all relevant times, Plaintiff Naomi Berman has been a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Lauder Plan. Ms. Berman resides in San Francisco.

6.     Defendant Estee Lauder Inc. ("Lauder Inc.") is a Delaware corporation with its principal place of business in Melville, New York. Lauder Inc. is the plan sponsor of the Lauder Plan and is a fiduciary of the Lauder Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercises authority or control respecting management or disposition of the Lauder Plan's assets, it exercises discretionary authority or discretionary control respecting management of the Lauder Plan, and/or it has discretionary authority or discretionary responsibility in the administration of the Lauder Plan. Among other authority, Lauder Inc. has the authority to appoint the Lauder Plan's Plan Administrator and exercises discretion in selecting and monitoring the Plan Administrator and/or other fiduciaries.

7.     Defendant Estee Lauder Inc. Employee Benefits Committee ("the Benefits Committee") is the Plan Administrator of the Lauder Plan within the meaning of ERISA § 3(16)(a)(i), 29 U.S.C. § 1002(16)(a)(i). At all relevant times, the Benefits Committee was a named fiduciary of the Lauder Plan by reason of being the Plan Administrator. The Benefits Committee is located in New York, New York.

8.     Defendant Alight Solutions LLC is an Illinois limited liability company with its principal place of business in Illinois. At all relevant times, Alight's predecessor, Hewitt

1  Associates LLC ("Hewitt"), provided contract administration, record-keeping, and information
2  management services to the Lauder Plan. At all relevant times, Hewitt was a fiduciary of the
3  Lauder Plan within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised
4  authority or control respecting management or disposition of the Lauder Plan's assets, it
5  exercised discretionary authority or discretionary control respecting management of the Lauder
6  Plan, and/or it had discretionary authority or discretionary responsibility in the administration of
7  the Lauder Plan. Specifically, upon information and belief, Hewitt operated a telephone
8  customer service center and a website at http://www.ybr.com/esteelauder, both of which
9  provided Lauder Plan participants with the ability to manage their Lauder Plan accounts,
10 including requesting distributions of benefits. Upon information and belief, Hewitt exercised
11 control over Lauder Plan assets by directing distributions from participants' accounts, including
12 the unauthorized distributions in this case. Hewitt was compensated for its services by direct
13 payment from the Lauder Plan. Alight maintains an office in San Francisco.
14         9.      Defendant State Street Bank & Trust Co. ("State Street") is a Massachusetts
15 corporation with its principal place of business in Boston, Massachusetts. At all relevant times,
16 State Street served as custodian of the Lauder Plan's assets and provided investment
17 management services to the Lauder Plan. State Street was compensated for its services by
18 investment management fees paid directly from the Lauder Plan, and by "'soft dollar'
19 commissions." As such, State Street was a fiduciary of the Lauder Plan within the meaning of
20 ERISA § 3(21), 29 U.S.C. § 1002(21), in that it exercised authority or control respecting
21 management or disposition of the Lauder Plan's assets, it exercised discretionary authority or
22 discretionary control respecting management of the Lauder Plan, it had discretionary authority
23 or discretionary responsibility in the administration of the Lauder Plan, and/or it provided
24 investment advice for a fee or other compensation from the Lauder Plan. State Street maintains
25 an office in San Francisco.
26         10.     The Lauder Plan is an employee pension benefit plan as defined by ERISA §
27 3(2), 29 U.S.C. § 1002(2), sponsored by Lauder Inc. The Lauder Plan is a defined contribution
28 or "individual account" pension plan as defined in ERISA § 3(34), 29 U.S.C. § 1002(34).

1  According to the Lauder Plan's 2016 IRS Form 5500, as of December 31, 2016, the Lauder Plan

2  had 16,257 participants with account balances, and $1,413,095,851 in assets.

**FACTS**

4  11.  Ms. Berman began working for MAC Cosmetics, a division of the Estee Lauder

5  Companies, in San Francisco in November 1998. She worked full-time while putting herself

6  through college and then earning a teaching credential.

7  12.  While working for MAC Cosmetics, Ms. Berman contributed the maximum

8  permitted amount to the Lauder Plan and received matching contributions.

9  13.  In March 2006, Ms. Berman left MAC Cosmetics to become a teacher in the San

10  Francisco Unified School District.

11  14.  As a vested participant in the Lauder Plan, Ms. Berman continued to receive

12  periodic Lauder Plan account statements by mail.

13  15.  By June 30, 2016, Ms. Berman's account balance in the Lauder Plan had grown

14  to more than $90,000. A true and correct copy of Ms. Berman's account statement for the

15  second quarter of 2016 is attached hereto as Exhibit A.

16  16.  On or about October 24, 2016, Ms. Berman received by mail a document on

17  Estee Lauder Companies letterhead entitled "Confirmation of Payment – 401(k) Savings Plan"

18  and dated October 10, 2016 ("the October 10 Confirmation of Payment"). This document stated

19  that on October 7, 2016, the Lauder Plan had distributed $37,000 from Ms. Berman's account to

20  a checking account at Suntrust Bank. A true and correct copy of the October 10 Confirmation of

21  Payment is attached hereto as Exhibit B.

22  17.  Subsequently, Ms. Berman received by mail another Confirmation of Payment,

23  this one dated October 18, 2016 ("the October 18 Confirmation of Payment"). The second

24  Confirmation of Payment stated that the Lauder Plan had distributed $50,000 from Ms.

25  Berman's account to a checking account at TD Bank. A true and correct copy of the October 18

26  Confirmation of Payment is attached hereto as Exhibit C.

27  18.  Also subsequent to receiving the October 10 Confirmation of Payment, Ms.

28  Berman received by mail her Lauder Plan account statement for the third quarter of 2016, which

1  showed a withdrawal of $12,000. Ms. Berman learned from Estee Lauder that the $12,000 had
2  been distributed on September 29, 2016, to an account at Woodforest National Bank. Ms.
3  Berman never received a Confirmation of Payment for the September 29 distribution. A true and
4  correct copy of Ms. Berman's Lauder Plan account statement for the third quarter of 2016 is
5  attached hereto as Exhibit D.

6  19.  The Lauder Plan account statements and Confirmations of Payment state that
7  they are "delivered by Aon," referring to Aon Consulting, Inc., the sole member (owner) of
8  Hewitt Associates LLC.

9  20.  Ms. Berman never requested or authorized any distribution from the Lauder Plan,
10 and never had any account at Woodforest National Bank, Suntrust Bank, or TD Bank.

11 21.  By the time that Ms. Berman received the first mailed distribution notice, all
12 three distributions had been completed.

13 22.  Upon receiving the first Confirmation of Payment, Ms. Berman telephoned the
14 Hewitt Customer Service Center at the number on the Confirmation of Payment. The Customer
15 Service Center informed her that her remaining account balance was $3,791.

16 23.  The Customer Service Center stated that it would investigate the unauthorized
17 distributions, but never provided Ms. Berman with any information regarding its investigation.

18 24.  Between October 24, 2016, and January 2, 2017, Ms. Berman made at least 23
19 calls to the Customer Service Center regarding the unauthorized distributions. Ultimately, the
20 Customer Service Center informed Ms. Berman that it had completed its investigation, no
21 money had been recovered, and Ms. Berman's Lauder Plan account would not be made whole
22 for the losses. Neither Lauder Inc., nor the Benefits Committee, nor Hewitt contacted Ms.
23 Berman further regarding the unauthorized distributions.

24 25.  On or about October 25, 2016, Ms. Berman reported the unauthorized
25 distributions to the San Francisco Police Department and the FBI, and placed a fraud alert on
26 her credit file with Equifax.

27 26.  On November 7, 2016, State Street emailed Ms. Berman and requested that she
28 complete an "Affidavit of Forgery" for each unauthorized distribution. Ms. Berman returned the

requested affidavits the same day. State Street did not contact Ms. Berman further regarding the unauthorized distributions.

27. Other than the unauthorized distributions from her Lauder Plan account, Ms. Berman did not experience unauthorized activity in any of her financial accounts.

28. Prior to her receipt of the October 10 Confirmation of Payment, Ms. Berman had no knowledge of the unauthorized distributions. None of the Defendants contacted her prior to the distributions to obtain her authorization to make the distributions, and none of the Defendants notified her of the distributions by any means other than the mailed Confirmations of Payment and third-quarter account statement, until she telephoned the customer service center.

**FIRST CLAIM FOR RELIEF**

**Claim to Restore Plan Losses
Pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2)
Against All Defendants**

29. Ms. Berman incorporates Paragraphs 1 through 28 as though fully set forth herein.

30. ERISA § 404(a), 29 U.S.C. § 1104(a), requires that a fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries; for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan; and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

31. ERISA § 409, 29 U.S.C. § 1109, provides that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by ERISA Title I shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

32. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a plan participant to bring

1 an action for appropriate relief under ERISA § 409.

2     33. Defendants, and each of them, breached their fiduciary duties of loyalty and prudence by causing or allowing the Lauder Plan to make unauthorized distributions of plan assets; failing to confirm authorization for distributions with the plan participant before making distributions; failing to provide timely notice of distributions to the plan participant by telephone or email; failing to identify and halt suspicious distribution requests, such as requests for multiple distributions to accounts in different banks; failing to establish distribution processes to safeguard Lauder Plan assets against unauthorized withdrawals; failing to monitor other fiduciaries' distribution processes, protocols, and activities; and related acts and omissions.

    34. As a result of Defendants' breaches, the Lauder Plan has suffered losses, including $99,000 and investment earnings thereon from Ms. Berman's account.

## SECOND CLAIM FOR RELIEF

**Claim for Penalties for Document Disclosure Violations
Pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c)
Against Defendant Benefits Committee**

    35. Ms. Berman incorporates Paragraphs 1 through 28 as though fully set forth herein.

    36. ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), provides that a plan administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

    37. ERISA § 502(c), 29 U.S.C. § 1132(c), provides that any administrator who fails or refuses to comply with a request for any information which such administrator is required by ERISA to furnish to a participant or beneficiary by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

38. 29 C.F.R. § 2575.502c-1 increases the penalty under ERISA § 502(c) to $110 per day.

39. On March 25, 2019, counsel for Ms. Berman made a written request for Lauder Plan documents to the Benefits Committee pursuant to ERISA § 104(b)(4). Upon information and belief, the Benefits Committee received the request on March 28, 2019. The Benefits Committee has not responded to the request.

40. Accordingly, the Benefits Committee has failed or refused to provide requested material since April 27, 2019.

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Berman prays that the Court grant the following relief:

As to the First Claim for Relief:

- A. Declare that Defendants, and each of them, have breached their fiduciary duties of loyalty and prudence;
- B. Order that Defendants, and each of them, restore to Ms. Berman's Lauder Plan account $99,000, plus investment earnings thereon from the distribution dates to the date of judgment herein;
- C. Award Ms. Berman reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and
- D. Provide such other equitable and remedial relief as the Court deems appropriate.

As to the Second Claim for Relief:

- A. Order that Defendant Benefits Committee pay to Ms. Berman a penalty of $110 per day for each day from April 27, 2019, to the day that the Benefits Committee provides to her all documents required to be provided under ERISA § 104(b)(4);
- B. Award Ms. Berman reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g); and

//
//
//

1  C. Provide such other relief as the Court deems equitable and just.

Respectfully submitted,

Dated: October 9, 2019  RENAKER HASSELMAN SCOTT LLP

By: */s/ Teresa S. Renaker*

Teresa S. Renaker
Attorneys for Plaintiff